WO                                                                                                                    JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy M. Meyer, | No. CV 21-01209-PHX-MTL (DMF) |
| Plaintiff, | |
| vs. | **ORDER** |
| Core Civic, | |
| Defendants. | |

Plaintiff Jeremy M. Meyer, who is currently confined in the Saguaro Correctional Center (SCC) in Eloy, Arizona, brought this pro se civil rights action under 42 U.S.C. §1983 against CoreCivic, the private company that operates SCC. (Doc. 10.)[1] Before the Court are the parties' Motions for Summary Judgment. (Docs. 45, 54.) The Court will grant Defendant's Motion, deny Plaintiff's Motion, and terminate the action.

**I.    Background**

In his First Amended Complaint, Plaintiff asserted an Eighth Amendment medical care claim against Defendant. (Doc. 10.) Plaintiff alleged that on December 18, 2020, he awoke at 2:30 a.m. with severe abdominal pain and requested emergency medical services for worsening pain; however, pursuant to Defendant's policy, staff refused to provide emergency medical attention and told Plaintiff to wait until breakfast was served

---

[1] Plaintiff initiated this action in the Central Pinal Justice Court, and Defendant removed the action to federal court. (Doc. 1, CV 2021-0657.)

at 6:00 a.m. (*Id.*) Plaintiff alleged that his pain intensified, he suffered extreme cramping and nausea, and he became unable to walk without assistance, yet staff ignored his requests for medical assistance. (*Id.*) Plaintiff alleged that another prisoner assisted him to medical at 6:00 a.m., and he was taken to the hospital for emergency medical treatment around 11:00 a.m. (*Id.*) On screening, the Court determined that Plaintiff sufficiently alleged a deliberate indifference claim against Defendant for the delay in treatment from 2:30 to 11:00 a.m. (Doc. 12 at 4.)

Defendant moves for summary judgment on the grounds that (1) Plaintiff did not suffer a serious medical need, (2) Plaintiff cannot prove deliberate indifference by correctional staff,[2] (3) Plaintiff's *Monell* liability claim fails, (4) Plaintiff is not entitled to transfer back to Idaho, and (5) Plaintiff is not entitled to punitive damages. (Doc. 45.)[3]

Plaintiff moves for summary judgment on the grounds that (1) his condition constituted a serious medical need, and (2) correctional staff acted with deliberate indifference when they failed to ensure timely medical services for Plaintiff. (Doc. 54.)

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it

---

[2] Defendant also argued that Plaintiff cannot prove deliberate indifference by medical staff. (Doc. 45.) But in his Response, Plaintiff repeatedly clarified that he did not allege deliberate indifference by medical staff and this action is not against medical staff; rather, it relates only to the response—or lack of response—from security/correctional personnel and Defendant's policy that allowed correctional staff to decline medical assistance to a prisoner suffering a serious medical need. (Doc. 58 at 3, 5, 7.)

[3] Upon the filing of Defendant's Motion for Summary Judgment, the Court issued an Order with the Notice required under *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998) (en banc), which informed Plaintiff of the summary judgment requirements under Federal Rule of Civil Procedure 56 and set a briefing schedule. (Doc. 47.)

believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire and Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court does not make credibility determinations; it must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). Where the nonmovant is a pro se litigant, the court must consider as evidence in opposition to summary judgment all of the nonmovant's contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   Procedural and Evidentiary Issues**

    **A.   Local Rule of Civil Procedure 56.1**

Defendant argues that Plaintiff failed to comply with Local Rule of Civil

Procedure 56.1, which requires the nonmovant to file a separate statement of facts in response to the movant's statement of facts, and for each paragraph of the movant's separate statement of facts, the nonmovant must set forth a correspondingly numbered paragraph indicating whether he disputes the asserted fact. (Doc. 65 at 1–2, citing LRCiv 56.1(b).) Defendant contends that, because Plaintiff failed to file a controverting statement of facts, the Court may deem Defendant's facts admitted. (*Id.* at 4.)

The Court may only consider a movant's asserted facts as undisputed where those facts are properly supported by citations to particular parts of the record. *See* Fed. R. Civ. P. 56(c)(a)(A). Thus, even where a nonmovant fails to file any controverting statement of facts, the Court would only consider as undisputed those facts of the movant's that are properly supported. *See* Fed. R. Civ. P. 56(c)(1)(A); *Nissan Fire*, 210 F.3d at 1102–03 (if the summary judgment movant fails to meet its initial burden of production, the opposing party need not respond or produce anything).

Because Plaintiff is a pro se litigant, he is afforded some leeway in the application of the rules governing summary judgment. The Ninth Circuit has directed district courts to "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). Plaintiff did not file a separate statement of facts. But in his Response, Plaintiff cites to and quotes Local Rule of Civil Procedure 56.1(b), and he asserts that Defendant failed to number any of the paragraphs within its Motion, making it almost impossible for Plaintiff to adhere to the requirement that he set forth correspondingly numbered paragraphs and indicate whether he disputes each asserted fact. (Doc. 58 at 2.) Plaintiff explains that, consequently, he has identified Defendant's asserted facts by citing to the page and line number within Defendant' Motion, and he proceeds to state whether he agrees with or objects to each of Defendant's asserted facts. (*Id.*) Based on this response, it appears that Plaintiff may not have received Defendant's Separate Statement of Facts. Regardless, Plaintiff's Response clearly responds to Defendant's

asserted facts and identifies those facts that are disputed.  The Court therefore will not deem all of Defendant's facts admitted.

### B. Admissibility of Sworn Statements

With his Response, Plaintiff submitted numerous declarations from other prisoners. (Doc. 58-2 at 4, Gutierrez Decl.; Doc. 58-4 at 1, Harshbarger Decl.; Doc. 58-4 at 6, Kilroy Decl.; Doc. 58-4 at 12, Moore Decl.; Doc. 58-4 at 14, Rieche Decl.) Defendant argues that the Court should disregard the declarations submitted by Plaintiff on the grounds that they are immaterial, not based on personal knowledge, or are self-serving. (Doc. 64 at 3–5.)

The Court only considers statements within declarations or affidavits that are relevant and based on personal knowledge, and that are admissible or may be presented in an admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (finding that the district court should have considered unsworn, inadmissible hearsay statements written by the plaintiff in a diary because at summary judgment, courts "do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents"); *McAfee v. Metro. Life Inc. Co.*, 368 F. App'x 771, 772 n.1 (9th Cir. March 1, 2010) (the plaintiff's unsworn letter was admissible under Rule 56 "because it was based on personal knowledge, and the contents could be presented in admissible form at trial") (citation omitted); *Rosenfeld v. Mastin*, No. CV 11-7002-DOC(E), 2013 WL 5705638, at *5 (C.D. Cal. Oct. 15, 2013) (under *Fraser* and its progeny, the district court should consider unsworn statements in the plaintiff's opposition concerning the force allegedly used on him during his arrest because the plaintiff has personal knowledge of the content of his statements and could present the statements through testimony at trial).[4]  Further, that a declaration "is self-serving bears

---

[4] The Supreme Court has explained that this caveat—to consider evidence that may be presented in admissible form at trial—applies only to the nonmovant: "[w]e do not mean that the *nonmoving party* must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex*, 477 U.S. at 324 (emphasis added). Thus, "[m]aterial in a form not admissible in evidence may be used to avoid, but not to obtain summary judgment[.]" *Walters v. Odyssey Healthcare Mgmt.*

- 5 -

on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact." *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999); *see Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (the district court cannot "disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature[,]" even if it is uncorroborated). Accordingly, absent a specific, sustainable objection by Defendant to a specific statement within a declaration, the Court will consider those declaration statements that are relevant, based on personal knowledge, and are admissible or may be presented in admissible form at trial. *See Reinlasoder v. City of Colstrip*, CV-12-107-BLG, 2013 WL 6048913, at *7 (D. Mont. Nov. 14, 2013) (unpublished) ("objections [ ] must be stated with enough particularity to permit the Court to rule").

### C. Lost Video

In this case, there was video footage of Plaintiff's cell front, his entry to the dayroom, his exit from the unit, and his movement to the medical unit. (Doc. 45 at 5.) But Defendant did not preserve the video footage. (*Id.* at 5 n.2.) Defendant submits the June 22, 2022 declaration of Warden Kline, who avers that, before the video footage was deleted, he reviewed it when preparing a response to Plaintiff's grievance on the issue. (*Id.*) Kline avers that the video footage showed, among other things, that Plaintiff was walking normally in the pod and walking without assistance and without apparent distress to the medical unit. (Doc. 46-3 at 5, Kline Decl. ¶¶ 14–15, 17–19.)

Defendant did not cite any legal authority to support that a court may consider witness testimony describing the contents of a destroyed video. (*See* Doc. 45.) It is not clear that such testimony would be admissible where the witness did not make contemporaneous notes when viewing the video. *See School Dist. No. 1J, Multnomah County, Ord. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993) ("[i]f documentary

---

*Long Term Disability Plan*, No. CV-11-00150-PHX-JAT, 2014 WL 4371284, at *3 (D. Ariz. Sep. 4, 2014) (internal quotation omitted); *see Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) (noting that at summary judgment, "we treat the opposing party's papers more indulgently than the moving party's papers").

- 6 -

evidence is cited as a source of a factual contention, Rule 56(e) requires attachment"); *see also E.E.O.C. v. Dillon Cos., Inc.*, 839 F. Supp. 2d 1141, 1145 (D. Colo. 2011) (holding that the plaintiff was prejudiced by the defendant's loss of video that depicted the alleged incident leading to the employee's termination, when the defendant planned to call witnesses to testify as to the tapes' contents); *U.S. v. Brown*, Crim. No. 08-00982009, 2009 WL 2338112, at *2 (W.D. Penn. July 29, 2009) (finding that the government was not entitled to offer into evidence testimony of government agents regarding the contents of a video they had viewed three years prior to prove the contents of the video, which had inexplicably been destroyed, in part because the agents did not take contemporaneous notes that could qualify as present sense impressions of the video); *cf. U.S. v. Drake*, 543 F.3d 1080, 1083, 1090 (9th Cir. 2008) (finding that the loss of digital surveillance video did not violate the defendant's due process rights because fourteen still images of the robbery were preserved, and the officers who viewed the video were available to testify to the contents of the video); *Toscano v. Lizarraga*, No. C 17-4060 WHA (PR), 2018 WL 10529594, at *5 (N.D. Cal. Nov. 28, 2018) (loss of video of witness interviews did not violate due process because there was comparable evidence; namely, the witnesses' admission to lying during the interviews and the interviewing officers' written notes of the interviews).

Regardless, at summary judgment, where the parties present competing sworn statements and different versions of the facts, the Court must take Plaintiff's facts and evidence as true. *Anderson*, 477 U.S. at 255. Plaintiff, his cellmate, and another prisoner, David Harshbarger, have established personal knowledge to testify as to the events that occurred on December 18, 2020. Therefore, where Kline's statements conflict with Plaintiff's evidence, Plaintiff's facts must be taken as true in the summary judgment analysis.[5]

---

[5] Plaintiff also argues that some of Kline's declaration statements are unreliable and moves for the statements to be stricken. (Doc. 58 at 3.) Plaintiff points to Kline's statement in which he avers that he "recall[s] that the security video footage showed . . . that Inmate Meyer came out of his cell on the lower housing tier of Lima Housing Unit,

## IV. Relevant Facts

Plaintiff is an Idaho Department of Corrections prisoner incarcerated at Defendant's SCC facility in Eloy, Arizona, pursuant to a correctional services agreement between Defendant and the Idaho Department of Corrections. (Doc. 46 ¶ 1; Doc. 58 at ¶ 1.)

On December 18, 2020, Plaintiff awoke with severe abdominal pain. (Doc. 10 at 3.) At around 2:30 a.m., Plaintiff woke up his cellmate, James Kilroy, with groaning sounds; Plaintiff was doubled over in pain, and he informed Kilroy that he did not feel well. (Doc. 58-4 at 6, Kilroy Decl.) Plaintiff pressed the button for the emergency intercom to get staff's attention. (*Id.*) About 10 minutes later, Officer Novak came to the cell door; she stated she would call medical. (*Id.*; Doc. 58 at 2.) Thereafter, Novak did not return to Plaintiff's cell. (*Id.*)

At 4:00 a.m., the cell doors opened to allow prisoners access to the day room. (Doc. 10 at 3.) About 10 minutes later, another prisoner, David Harshbarger entered the day room and saw Plaintiff on the other set of stairs not looking well. (Doc. 58-4 at 1, Harshbarger Decl.) Plaintiff and Harshbarger walked to the front window of the unit, where Plaintiff collapsed into the fetal position. (*Id.*) Harshbarger banged on the window to get the staff's attention and informed them that Plaintiff needed to go to medical; a female staff member said she had called medical and would do no more. (*Id.*)

Around 4:30 a.m., Kilroy and Plaintiff went downstairs; Kilroy and other prisoners tried to get officers to call medical again, but the officers would not listen to the prisoners. (Doc. 58-4 at 6, Kilroy Decl.)[6] By this time, Plaintiff was laying in the fetal

---

Charlie Pod. He was walking normally . . . ." (Doc. 46-3, Kline Decl. ¶ 14.) Plaintiff notes that he was housed on a second-floor tier in cell LC 69; thus, Kline misidentified Plaintiff with another prisoner on the lower tier. (Doc. 58 at 3.) Because the Court must take Plaintiff's evidence as true over Kline's statements, Plaintiff's request to strike those statements that contradict his evidence is denied as moot.

[6] Defendant argues that the prisoners' declaration statements are contradictory. (Doc. 64 at 3.) According to Defendant, Kilroy "stated he and Plaintiff went to the dayroom at 4:30 a.m. where he and 'other inmates' tried to get "officers' to call medical . . . ." (*Id.*) Defendant argues that this statement contradicts Harshbarger's statement that he arrived at the dayroom at 4:10 a.m. and found Plaintiff on the stairs. (*Id.*) Actually,

- 8 -

position by the front door of the pod. (*Id.*)  At some point, Officer Novak approached Plaintiff and then made a radio call for assistance by contacting the facility Captain on duty. (Doc. 46-3 at 6, Kline Decl. ¶ 24; Doc. 58 at 3). Novak informed the Captain of Plaintiff's status, and the Captain advised Novak that Plaintiff should go to the medical unit. (*Id.*)

Just before 6:00 a.m., Harshbarger walked Plaintiff to the medical unit, partially holding him upright. (Doc. 58-4 at 1, Harshbarger Decl.) When they arrived at medical, Harshbarger got the staff's attention and said Plaintiff needed to be seen. (*Id.*)

Medical records show that Plaintiff was assessed by Nurse Okuagu at 5:50 a.m.; it was noted as an emergency visit for lower left quadrant abdominal pain, and Nurse Okuagu documented that Plaintiff was "ambulatory." (Doc. 46-2 at 12.) The medical record documented that Plaintiff reported he vomited twice, and the color was white, that his vitals were within normal limits with blood pressure slightly elevated, and that his respirations were even and unlabored. (*Id.* at 10.) The documented plan was to keep Plaintiff in medical for observation until he could be seen by a provider. (*Id.*)

At 7:30 a.m., during another nurse assessment, Plaintiff reported pain at a 9/10 level. (*Id.* at 14.)

About 20 minutes later, Plaintiff was seen by Dr. Nale, who noted that Plaintiff appeared to be in significant pain, and Dr. Nale assessed acute lower left quadrant abdominal pain, nausea without vomiting (even though Plaintiff reported that he vomited twice), and elevated blood pressure with history of hypertension. (*Id.* at 19; Doc. 58 at 3.) Dr. Nale ordered 1000 mg of Tylenol and that Plaintiff be transported to the

---

Harshbarger avers that he could see Plaintiff from the dayroom, without indicating whether Plaintiff—whom he describes as being "on the other set of stairs"—was in the dayroom. (Doc. 58-4 at 1.) And Harshbarger avers that he and Plaintiff went to the front window of the unit, without indicating whether that window was in the dayroom. (*Id.*) Kilroy avers that "at 4:30 a.m., we went down stairs where myself and other inmates tried to get officers to call medical again." (Doc. 58-4 at 6.) Kilroy did not state that they went into the dayroom. Because neither party provides an explanation of the layout of the prison facility; specifically, the locations of Plaintiff's cell, the front window of the unit, the stairs, the dayroom, and the front door of the pod, it is not clear that Kilroy's and Harshbarger's statements conflict as to when Plaintiff went to the dayroom and with whom.

- 9 -

emergency room via a facility van. (Doc. 46-2 at 19.) A nurse noted that Plaintiff was unable to swallow Tylenol due to nausea. (*Id.* at 16.)

Plaintiff arrived at the Banner Casa Grande Medical Center at 9:22 a.m. (Doc. 46 ¶ 23; Doc. 58 at 3.) At approximately 11:00 a.m., a CT scan was performed of Plaintiff's abdomen; the results were unremarkable with no abnormalities other than mild gastric wall thickening, which could be from lack of distention or gastritis. (Doc. 46 ¶ 25; Doc. 58 at 3.) Plaintiff was given a prescription for Zofran for nausea and omeprazole and dicyclomine for a differential diagnosis of gastritis. (Doc. 46 ¶ 29.) He was discharged back to SCC around 2:30 p.m., at which time he stated he was feeling much better. (Doc. 46 ¶¶ 30–31; Doc. 58 at 3.) Plaintiff was housed in medical observation for 14 days to monitor for COVID due to being offsite, and he reported no further pain or distress during this period. (Doc. 46 ¶¶ 32–33; Doc. 58 at 3.)

Plaintiff utilized the grievance process to complain about the lack of response to his medical need on December 18, 2020. (Doc. 46 ¶ 67.) After reviewing Plaintiff's Grievance, Warden Kline redirected staff on initiating emergency medical responses. (*Id.* ¶ 69.) Defendant asserts that its policies and procedures require staff members who encounter a medical emergency to immediately summon assistance by the most expeditious means available. (*Id.* ¶ 68.) In denying Plaintiff's grievance, Warden Kline informed Plaintiff that "staff have been addressed as it relates to the requirements for initiating a medical emergency." (*Id.* ¶ 67.)

**V.     Claim Against Defendant**

To support a § 1983 claim against a private entity performing a traditional public function, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138–39 (9th Cir. 2012) (extending the "official policy" requirement for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), to private entities acting under color of law). Under *Monell*, a plaintiff must show: (1) he suffered a constitutional injury; (2) the entity

had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional injury. *See Monell*, 436 U.S. at 691–94; *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

## VI.  Constitutional Injury

### A.  Governing Standard

To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard.  First, a prisoner must show a "serious medical need."  *Id.* (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citation omitted), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).  Examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059–60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent.  *Jett*, 439 F.3d at 1096.  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'"  *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need.  *Jett*, 439 F.3d at 1096.  "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need

not defer to the judgment of prison doctors or administrators.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

Even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096, 1098; *see Hunt*, 865 F.2d at 200 (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

**B.     Analysis**

**1.     Serious Medical Need**

Defendant argues that Plaintiff did not suffer a serious medical need because he only had subjective complaints of pain; he did not suffer a "remarkable medical condition," but only received a differential diagnosis of gastritis; the pain resolved; no follow up was ordered or recommended; and he did not have a chronic or ongoing condition. (Doc. 45 at 8–9.) Plaintiff contends that the facts show his condition was worthy of comment and treatment, as evidenced by medical staff's response and the order for transport to the hospital, and that he suffered severe and debilitating pain, which he asserts demonstrates a serious medical need. (Doc. 58 at 4; *see* Doc. 54 at 5.)

Defendant discounts Plaintiff's complaints of pain because they were only subjective; however, pain is inherently subjective. *See Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872 (9th Cir. 2008) ("individual reactions to pain are subjective and not easily determined by reference to objective measurements"); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) ("there is no requirement that a prisoner provide 'objective' evidence of his pain and suffering—self-reporting is often the only indicator a doctor has of a patient's condition"). The Court must take as true Plaintiff's allegations that from approximately 2:30 a.m. until after he arrived at the hospital almost 8 hours later, Plaintiff suffered severe and debilitating pain that made it difficult for him to stand and walk. *See S. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1070 (C.D. Cal. 2005) (a declarant has personal knowledge of his or

her own symptoms). Moreover, the medical record includes Dr. Nale's "Objective" notes stating that Plaintiff "is uncomfortable, appears in significant pain." (Doc. 46-2 at 19.)

In addition to documented pain, the medical records show that Plaintiff's condition warranted treatment in the form of medical observation, pain medication, transport to the hospital, a CT scan, lab tests, and prescription medications to treat gastritis. (*Id.* at 19, 22, 24–26, 34–37, 40–41.) Contrary to Defendant's assertion, the emergency room physician also ordered a follow up visit with Plaintiff's primary care physician to occur two days after the hospital visit. (*Id.* at 37.)

On this record, a reasonable jury could find that Plaintiff suffered severe pain and his condition was worthy of comment and treatment such that it constituted a serious medical need. *See McGuckin*, 974 F.2d at 1059–60.

### 2. Deliberate Indifference

Defendant argues that Plaintiff cannot show deliberate indifference by correctional staff because there is no evidence that the "unidentified" staff member he allegedly encountered at 2:30 a.m. was subjectively aware that Plaintiff was suffering from a serious medical need and deliberately ignored that need. (Doc. 45 at 11.) Defendant contends that, because the correctional staff member was not a trained medical provider, the officer could not have assessed whether Plaintiff needed immediate medical care. (*Id.*) Defendant argues that the correctional staff member who encountered Plaintiff laying by the unit door was not deliberately indifferent because she "took immediate action to refer Plaintiff for medical assistance." (*Id.* at 11–12.) Finally, Defendant argues that, even if there was a delay in medical treatment, there was no resulting harm. (*Id.* at 12.)

Plaintiff argues that the only way for him or any prisoner to obtain emergency medical care is via correctional staff, and in this case, he relayed his serious condition to a staff member, Officer Novak, and she could observe him in pain. (Doc. 58 at 5–6.) Plaintiff asserts that Novak called for assistance, demonstrating that she understood the need for medical care. (*Id.*) Plaintiff argues that, nonetheless, even after a call was

made, neither Novak nor any other officer assisted Plaintiff to the medical unit; instead, another prisoner helped him.  (*Id.* at 6.)

Non-medical officials can be liable for medical deliberate indifference.  *See Caplinger v. CCA*, 999 F. Supp. 2d 1203, 1214 (D. Idaho 2014) ("the fact that an official is not medically trained will not shield that official from liability for deliberate indifference").  As stated, prison officials—even non-medical officials—are deliberately indifferent to a prisoner's serious medical needs when they deny or delay medical treatment.  *Wood*, 900 F.2d at 1334; *see Estelle*, 429 U.S. at 106 (a defendant's action or inaction can be "sufficiently harmful to evidence deliberate indifference to serious medical needs").

When taking Plaintiff's facts as true, Plaintiff spoke to Officer Novak at 2:30 a.m., at which time he was in severe pain and groaning, and Novak informed him that she would call medical.  The inference can be made that Novak observed Plaintiff's painful condition and, given that she said she would call medical, she appreciated the need for medical care and was subjectively aware of his medical need.  The record does not show that there was, in fact, any call to medical at that time, nor was there any follow up by Novak.  The facts show that Novak finally called a Captain hours later after Plaintiff was laying by the unit door; however, even though the Captain told her Plaintiff should go to medical, neither she nor any other officer provided Plaintiff assistance to the medical unit.  A reasonable jury could find that Novak was aware of Plaintiff's serious medical need and that she failed to timely respond to Plaintiff's medical need, which resulted in a delay in medical care and amounted to deliberate indifference to Plaintiff's serious medical need.

### 3. Harm

The last element in the deliberate indifferent analysis requires Plaintiff to demonstrate that he was harmed by the delay.  *Jett*, 439 F.3d at 1096.  The medical records show that, upon his arrival at medical just before 6:00 a.m., Plaintiff's vitals were taken by nursing staff and he was placed under observation.  (Doc. 46-2 at 8–12, 14.)

But Plaintiff did not see a physician until 7:49 a.m., at which time, Dr. Nale referred Plaintiff to the emergency room. (Doc. 46-2 at 4, Nale Decl. ¶¶ 11–12.) The facts show that Plaintiff did not receive any testing or diagnosis until Dr. Nale arrived, and, while in the medical unit, his pain remained at a high level. Although he was given a Tylenol tablet at one point, the record indicates that he could not swallow it because of his stomach pain. (Doc. 46-2 at 16.) Thus, although Plaintiff was observed and monitored, he did not receive any treatment that alleviated his pain while he was in the medical unit. The only reasonable inference is that, even if Plaintiff had been taken to the medical unit two or three hours earlier, he would have remained in observation until Dr. Nale arrived and assessed him just before 8:00 a.m.

Plaintiff argues that correctional staff was aware he was suffering severe pain "that could have been caused by any number of life-threatening conditions such as: a burst appendix, ruptured spleen, perforated liver, [or] twisted intestines[,]" and there was no way of knowing the severity of his condition prior to getting medical assessment. (Doc. 58 at 7.) Indeed, if Plaintiff had in fact suffered something as extreme as a burst appendix or twisted intestines, there would likely be a showing of harm from correctional staff's inaction and the resulting delay in medical care. But fortunately, his condition was not so dire, and, although he suffered severe pain, there were no further complications or exacerbated injury. Plaintiff fails to present any evidence to show that, in these circumstances, the 3-hour delay in getting to the medical unit caused him to suffer further harm. *See Grant v. Roell*, No. 2:19-CV-162, 2020 WL 1321524, at \*9 (S.D. Tex. Feb. 19, 2020) ("[t]o the extent Plaintiff suffered [abdominal] pain for three hours while awaiting being taken to medical, such a short delay in receiving treatment that does not cause lasting complications fails to constitute deliberate indifference"); *see also Brown v. Darnold*, 505 Fed. Appx. 584, 587 (7th Cir. 2013) (delay of a few hours in giving pain medication was not an Eighth Amendment violation); *Martinez v. Health Care Partners Foundation, Inc.*, No. 14-cv-02399-RM-KLM, 2016 WL 11164807, at \*4 (D. Colo. Feb. 25, 2016) ("the fact that Defendant did not rush Plaintiff to the hospital as soon as he

complained of abdominal pain does not constitute the sort of delay evidencing a reckless disregard or deliberate indifference").

In sum, although there is a question of fact whether Officer Novak acted with deliberate indifference to Plaintiff's serious medical need, there is no evidence to support that Plaintiff was harmed by Novak's alleged indifference and the resulting delay in treatment. Plaintiff's deliberate indifference claim therefore fails, and he cannot establish a constitutional injury to support his claim against Defendant. *See Hunt*, 865 F.2d at 200. Defendant's Motion for Summary Judgment will be granted on this basis, and the Court need not address the remaining *Monell* elements or Defendant's arguments regarding a transfer and punitive damages. Plaintiff's Motion for Summary Judgment will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 45) and Plaintiff's Motion for Summary Judgment (Doc. 54.)

(2) Defendant's Motion for Summary Judgment (Doc. 45) is **granted**; Plaintiff's First Amended Complaint is dismissed with prejudice.

(3) Plaintiff's Motion for Summary Judgment (Doc. 54) is **denied**.

(4) The Clerk of Court must enter judgment accordingly and terminate the action.

Dated this 9th day of December, 2022.

Michael T. Liburdi
United States District Judge